GREEN HARRIS *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

Where several persons were indicted for the offense of an assault with intent to commit murder, and it appeared that there was a consider-

able crowd present besides the defendants at the time the crime was alleged to have been committed, evidence from a witness to the effect that he heard some one cry "kill him, kill him" was inadmissible.

Criminal law. Evidence. Before Judge HILL. Macon Superior Court. December Term, 1874.

For the facts, see the decision.

ROBINSON & SON; W. S. WALLACE, for plaintiffs in error.

C. F. CRISP, solicitor general, by brief, for the state.

WARNER, Chief Justice.

The defendants were indicted for the offense of an "assault with intent to murder," and on the trial thereof were *all* found guilty by the jury. A motion was made by the defendants for a new trial on the several grounds specified therein, which was overruled by the court, and the defendants excepted. One of the grounds of error alleged in the motion for a new trial is, "that the court allowed Summerlin, a witness for the state, to testify, over the objection of defendants, that he heard some one in the crowd cry 'Kill him! kill him!' when the evidence did not show that such cry came from any one of the defendants, or any one engaged with them as conspirators or joint offenders."

It appears from the evidence in the record that a great number of persons were present at the time the difficulty occurred between the defendants and the party assaulted, which was in a public street of the town where there had been a political meeting. The evidence is that there was a good crowd following Rhodes at the time he was assaulted by the defendants, twenty-five or thirty, who acted like they were pretty tight. The evidence in the record does not disclose the fact that a conspiracy was proved between the defendants prior to the difficulty, to do any bodily harm to Rhodes, the party assaulted. The only evidence of their intention to do him any bodily harm was from their acts and conduct at the

time of the difficulty, and therefore, it was incumbent on the state to prove that the cry "kill him, kill him," came from the defendants, or some one of them. If there had not been any other persons present but those engaged in the difficulty, it would have been a fair legal presumption, that the words "kill him," were uttered by the defendants, or some one of them, but the evidence shows that there was a large crowd of persons present besides the defendants, at the time of the difficulty between the parties.

The defendants were indicted for an assault upon Rhodes, with the intent to murder him. The evidence of the words heard by the witness, was offered to prove *that intention* on the part of the defendants, and if it had been shown that the defendants, or any one of them engaged in the unlawful act of assaulting Rhodes, had uttered the words testified to by the witness, it would have been strong evidence as to what was their intention in making the assault upon him, and it is quite probable that the jury found the defendants guilty upon that evidence, when it was not proved that any one of the defendants uttered the words which the witness heard. The material point in the case was, with what *intention* was the assault made on Rhodes by the defendants? To prove that it was their intention to murder him, the state was allowed to prove by the witness, that he heard some one in the crowd of persons who were present at the time of the difficulty, cry out "kill him, kill him," when the evidence did not show that such cry came from any one of the defendants or from any one engaged with them as conspirators, or joint offenders. The admission of this evidence over the defendants' objection, to prove their *intention* in making the assault, under the statement of facts disclosed by the record, was error. Whether the defendants were guilty of an assault with intent to murder under the evidence, or only guilty of an aggravated riot, or an aggravated assault and battery, we express no opinion. Whilst it is the policy of the state to indict and punish those who violate the law for the grade of offense of which they are guilty, it is not the policy of the state to indict and

punish offenders for a *higher grade* of offense, as defined by the penal Code, than that for which they are actually guilty. Let the judgment of the court below be reversed.